IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE

VICKIE COWANS,

        Plaintiff,

v.         No. 2:13-CV-2801-JDT

COMMISSIONER OF
SOCIAL SECURITY,

        Defendant.

---

ORDER AFFIRMING DECISION OF COMMISSIONER

---

Plaintiff has filed this action to obtain judicial review of Defendant Commissioner's final decision denying her application for supplemental security income ("SSI") benefits based on disability under the Social Security Act ("the Act"). Plaintiff's application was denied initially and upon reconsideration by the Social Security Administration. Plaintiff then requested a hearing before an administrative law judge ("ALJ"), which was held April 19, 2012.

On June 21, 2012, the ALJ issued a decision, finding that Plaintiff was not entitled to benefits. The appeals council affirmed the ALJ's decision. This decision became the Commissioner's final decision. Plaintiff filed this action, requesting reversal of the decision of the Commissioner or a remand. For the reasons set forth below, the decision of the Commissioner is AFFIRMED.

Pursuant to 42 U.S.C. § 405(g), a claimant may obtain judicial review of any final

decision made by the Commissioner after a hearing to which he was a party. "The court shall have the power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." Id. The court's review is limited to determining whether or not there is substantial evidence to support the Commissioner's decision, 42 U.S.C. § 405(g), and whether the correct legal standards were applied. See Lindsley v. Commissioner, 560 F.3d 601, 604–08 (6th Cir. 2009); Kyle v. Commissioner, 609 F.3d 847, 854 (6th Cir. 2010).

The Commissioner, not the court, is charged with the duty to weigh the evidence, to make credibility determinations and resolve material conflicts in the testimony, and to decide the case accordingly. See Bass v. McMahon, 499 F.3d 506, 509 (6th Cir. 2007). When substantial evidence supports the Commissioner's determination, it is conclusive, even if substantial evidence also supports the opposite conclusion. See Foster v. Halter, 279 F.3d 348, 353 (6th Cir. 2001); Mullen v. Bowen, 800 F.2d 535, 545 (6th Cir. 1986). A reviewing court must defer to findings of fact by an appeals council when those findings conflict with the factual findings of the ALJ. Id. at 545.[1]

Plaintiff was born in 1963 and has an eleventh grade education. R. 30. She has worked as a waitress and ticket taker, but the ALJ determined that these jobs did not qualify as past

---

[1] "The federal court's standard of review for SSI cases mirrors the standard applied in social security disability cases." D'Angelo v. Commissioner, 475 F. Supp.2d 716, 719 (W.D. Mich.2007), citing Bailey v. Secretary, 1991 WL 310 at * 3 (6th Cir. Jan.3, 1991). "The proper inquiry in an application for SSI benefits is whether the plaintiff was disabled on or after her application date." Casey v. Secretary, 987 F.2d 1230, 1233 (6th Cir.1993).

relevant work. R. 20, 96, 108, 125. Plaintiff alleges that she became disabled on February 1, 2008, due to anxiety, depression, left knee pain, high blood pressure, and a tumor on her back. R. 107, 141, 155.

In his decision, the ALJ enumerated the following findings: (1) Plaintiff has not engaged in substantial gainful activity since the application date; (2) Plaintiff has severe impairments of hypertension, depression and history of polysubstance abuse; however, she does not have impairments, either alone or in combination, that meet or equal the requirements of any listed impairment contained in 20 C.F.R. pt. 404, subpt. P, app. 1 of the listing of impairments; (3) Plaintiff has the residual functional capacity to perform medium work except that she is limited to frequent climbing, balancing, stooping, kneeling, crouching, or crawling; she has the mental residual functional capacity to remember and carry out low level one to three step instructions and maintain concentration, persistence, and pace for periods of at least two hours and to relate appropriately to supervisors, peers, and the public and to adapt to routine changes in the workplace; (4) Plaintiff has no past relevant work; (5) Plaintiff was born on February 3, 1963, and was forty-seven years old on the application date, which is defined as a younger individual age; (6) Plaintiff has a limited education; (7) Transferability of skills is not material to the determination of disability because she has no past relevant work; (8) Considering Plaintiff's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform; (9) Plaintiff was not under a "disability" as defined in the Act at any time through the date of this decision.

The Social Security Act defines disability as the inability to engage in substantial gainful activity. 42 U.S.C. § 423(d)(1). The claimant bears the ultimate burden of establishing an entitlement to benefits. <u>Born v. Secretary</u>, 923 F.2d 1168, 1173 (6th Cir. 1990). The initial burden of going forward is on the claimant to show that she is disabled from engaging in his former employment; the burden of going forward then shifts to the Commissioner to demonstrate the existence of available employment compatible with the claimant's disability and background. <u>Id.</u>

The Commissioner conducts the following, five-step analysis to determine if an individual is disabled within the meaning of the Act:

> 1. An individual who is engaging in substantial gainful activity will not be found to be disabled regardless of medical findings.
>
> 2. An individual who does not have a severe impairment will not be found to be disabled.
>
> 3. A finding of disability will be made without consideration of vocational factors, if an individual is not working and is suffering from a severe impairment which meets the duration requirement and which meets or equals a listed impairment in Appendix 1 to Subpart P of the regulations.
>
> 4. An individual who can perform work that he has done in the past will not be found to be disabled.
>
> 5. If an individual cannot perform his or her past work, other factors including age, education, past work experience and residual functional capacity must be considered to determine if other work can be performed.

20 C.F.R. § 404.1520(a)(4); <u>Howard v. Commissioner</u>, 276 F.3d 235, 238 (6th Cir. 2002). Further review is not necessary if it is determined that an individual is not disabled at any point in this sequential analysis. Here, the sequential analysis proceeded to the fifth step.

4

Even though Plaintiff has no past relevant work, other jobs in the national economy that she can perform exist in substantial numbers.

Plaintiff argues that the ALJ erred when he found that she did not have an impairment or combination of impairments that medically equal any listing section, specifically Listing 12.04 (affective disorders). She also argues that the ALJ did not properly weigh the opinion of her treating physician and should have obtained the testimony of a vocational expert. Plaintiff's arguments are unpersuasive. The ALJ's decision shows that he properly applied the relevant listing standards, and substantial evidence supports a finding that Plaintiff can perform other jobs.

The ALJ found that Plaintiff has severe impairments of hypertension, depression, and history of polysubstance abuse. However, the ALJ also found that Plaintiff did not have an impairment or combination of impairments that medically met any listing section. When a claimant alleges that her impairment meets or equals a listed impairment, she must present specific medical findings that satisfy the criteria of the particular listing. See Foster v. Halter, 279 F.3d 348, 354 (6th Cir. 2001). Not only must a claimant show that she has a diagnosed condition found in the listings, she must also provide medical records documenting that it meets all the requirements of the applicable listing. Hale v. Secretary, 816 F.2d 1078, 1083 (6th Cir. 1987) (citing King v. Heckler, 742 F.2d 968, 973 (6th Cir. 1984)); accord Sullivan v. Zebley, 493 U.S. 521, 530 (1990) ("[f]or a claimant to show that [her] impairment matches a listing, it must meet *all* of the specified medical criteria. An impairment that manifests only some of those criteria, no matter how severely, does not

qualify" (emphasis in original)).

Substantial evidence supports a finding that Plaintiff failed to show that her depression met the requirements of listing 12.04, which provides as follows:

> 12.04 Affective Disorders: Characterized by a disturbance of mood, accompanied by a full or partial manic or depressive syndrome. Mood refers to a prolonged emotion that colors the whole psychic life; it generally involves either depression or elation.
>
> The required level of severity for these disorders is met when the requirements in both A and B are satisfied, or when the requirements in C are satisfied.

20 C.F.R. Pt. 404, Subpt. P, App. 1. Thus, Listing 12.04 requires that a claimant have documented medical findings that show the symptoms described in its "A" criteria, with depression requiring four of nine described symptoms. See 20 C.F.R. Part 404, Subpt. P, App. 1, § 12.04A1. To satisfy the "paragraph B" criteria, the mental impairments must result in at least two of the following: marked restriction of activities of daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence, or pace; or repeated episodes of decompensation, each of extended duration. A marked limitation means more than moderate but less than extreme. Repeated episodes of decompensation, each of extended duration, means three episodes within one year, or an average of once every four months, each lasting for at least two weeks.

In the present case, Plaintiff received minimal treatment for her physical and mental impairments for the relevant period from May 12, 2010, to June 21, 2012. R. 321-40. See 20 C.F.R. § 416.912(c) (a claimant must provide evidence showing how her impairments

affect her functioning during the alleged period of disability).  Given the limited extent of Plaintiff's treatment, the lack of weight given to the opinion of the treating physician, as discussed below, and the assessment of a state agency medical consultant that Plaintiff suffers from only mild restrictions on her daily living activities and social function and moderate difficulties with regard to concentration, persistence, and pace, with no signs of deterioration or decomposition for an extended duration, substantial evidence supports the ALJ's determination that Plaintiff failed to show that she had medical findings sufficient to meet or equal the "A" criteria of listing 12.04 as well as those of "B" or "C."

Plaintiff argues that the ALJ erred by not giving great weight to the opinion of her treating physician, Michael Seay, M.D. In a checkbox questionnaire form, Dr. Seay opined that Plaintiff had poor to no ability to perform most mental functions due to marked restrictions in activities of daily living, marked difficulty in maintaining social functioning, and repeated episodes of decompensation. R. 343-46.

As discussed in Lane v. Commissioner, 2013 WL 5428739 (W.D. Mich.):

> It does not appear that the Sixth Circuit has directly addressed the weight afforded to check-box forms filled out by treating physicians, however, other circuit courts and courts within the Sixth Circuit have cast doubt on the usefulness of such "checkmark" or "multiple choice" forms when unaccompanied by explanation or unsupported by physician's notes. See Larson v. Astrue, 615 F.3d 744, 751 (7th Cir.2010) ("Although by itself a check-box form might be weak evidence, the form takes on greater significance when it is supported by medical records."); Batson v. Comm'r of Soc. Sec., 359 F.3d 1190, 1195 (9th Cir.2004) (upholding the ALJ's discounting of a treating physician's opinion in check-list form because "an ALJ may discredit treating physicians' opinions that are conclusory, brief, and unsupported by the record as a whole ... or by objective medical findings"); Mason v. Shalala, 994 F.2d 1058, 1065–66 (3rd Cir.1993) ("Form reports in

7

which a physician's obligation is only to check a box or fill in a blank are weak evidence at best ... where these so-called reports are unaccompanied by thorough written reports, their reliability is suspect.") (internal quotations and citation omitted); Boley v. Astrue, No. 11–10896, 2012 WL 680393, at * 18 (E.D. Mich. Feb.10, 2012) ("Dr. Ulano merely checked off boxes on the form to indicate that [claimant] satisfied the requirements for listing § 12.05 'personality disorder' and almost satisfied the listing for § 12.04 'affective disorder'... [but] did not support any of these findings with any evidence in her treating record or any new observations from more recent treatments."); Ahee v. Comm'r of Soc. Sec., No. 07–CV–12071, 2008 WL 4377652, at *4 (E.D.Mich. Sept.22, 2008) ("The ALJ has discretion to reject a medical opinion, here a form, when the opinion is not supported by objective medical evidence.").

Id., citing Doyle v. Commissioner, 2012 WL 4829434 at *9 (Report and Recommendation) (Sept. 12, 2012), adopted (Oct. 10, 2012 E.D. Tenn.).

Additionally, Dr. Seay had seen Plaintiff only once during her treatment at Southeast Mental Health Center, and, at this exam, Dr. Seay reported normal or benign mental status findings, including normal attitude, behavior, perception, appearance, thought process, recent memory, abstract reasoning, intellectual functioning, intact attention, fair insight and judgment; and that she was noncompliant with her prescribed medication. R. 20, 321. See 20 C.F.R. § 416.927(c)(3)-(4). Thus, Dr. Seay's treatment notes do not support his opinion.

Moreover, the record show that Plaintiff had friends, socialized with family, played cards, and performed many daily living activities such as cooking, shopping, cleaning, and doing laundry, dishes, and yard work. R. 118-21, 133-34, 287, 310, 316, 329-30, 353. See 20 C.F.R. § 416.927(c)(4) ("Generally, the more consistent an opinion is with the record as a whole, the more weight we will give that opinion."); 20 C.F.R. § 416.927(c)(6) ("we will also consider any factors you or others bring to our attention, or which we are aware, which

tend to support or contradict the opinion"). Additionally, the record does not show any episodes of decompensation of extended duration, let alone repeated episodes, during the relevant period. R. 15, 20, 267-359. See 20 C.F.R. § 416.927(c)(4). Therefore, the ALJ properly discounted Dr. Seay's opinion as to Plaintiff's mental limitations.

Plaintiff also contends that the ALJ erred by not discussing the report from consultative examiner Sharon D. Gary, M.D. R. 228-33. Dr. Gray's exam was conducted in June 2008, nearly two years before the start of the relevant period in May 2010. R. 228. Even assuming this report had been from the relevant period, Dr. Gary's opinion was not entitled to special weight or deference. See 20 C.F.R. § 416.927(c); Barker v. Shalala, 40 F.3d 789, 794 (6th Cir. 1994) (unlike a treating source, the opinion of a one-time examining physician "was entitled to no special degree of deference").

It is the ALJ's responsibility to determine residual functional capacity based on all the relevant evidence, including medical records, observations of treating physicians and others, and the claimant's own description of her limitations. See 20 C.F.R. §§ 404.1545(a) & 404.1546; see also Her v. Commissioner, 203 F.3d 388, 391 (6th Cir. 1999). Here, the ALJ properly considered the medical opinions, including the opinions of consultative examiners Barry R. Siegel, M.D., and Samuel Holcombe, Psy.D., and reviewing sources Nathaniel D. Robinson, M.D., R. Einhorn, M.D., and Frank D. Kupstas, Ph.D., and Rebecca A. Hansmann, Psy.D. R. 283, 290-91, 311, 313, 318-19, and Plaintiff's subjective complaints and determined Plaintiff's residual functional capacity; this residual functional capacity finding represents Plaintiff's credible limitations and remaining abilities flowing from his conditions.

9

See 20 C.F.R. §§ 404.1546, 416.916; see also Mullen v. Bowen, 800 F.2d 535, 545 (6th Cir. 1986) (en banc)(The ALJ's residual functional capacity was within the "zone of choice" supported by substantial evidence). Thus, substantial evidence supports the determination that Plaintiff did not meet all the criteria of Listing 12.04 and that she had the residual functional capacity to perform a modified range of medium work

Plaintiff complains that the ALJ used the Medical-Vocational Guideline ("the Grids") to determine if she could perform other work in the national economy, rather than obtaining the testimony of a vocational expert. When a claimant's vocational characteristics coincide with the factors of a rule in the Medical-Vocational Guideline rules, the existence of jobs in the national economy for which she is suited is established and the claimant is considered not disabled. See 20 C.F.R. §§ 404.1569, 404.1569a(b), 416.969; 20 C.F.R. Part 404, Subpart P, App. 2, § 200.00(b); Heckler v. Campbell, 461 U.S. 458, 461-62 (1983) (the Grids relieve the Commissioner "of the need to rely on vocation experts by establishing through rulemaking the types and numbers of jobs that exist in the national economy"). Although Plaintiff's residual functional capacity included some minor nonexertional limitations, those limitations had little or no effect on the occupational base of unskilled medium work. See Kimbrough v. Secretary, 801 F.2d 794, 796 (6th Cir. 1986) (a minor nonexertional limitation does not preclude application of the Grids). Plaintiff's nonexertional limitation to perform postural activities up to a frequent basis would not significantly erode the base for medium jobs, and unskilled jobs generally involved working with objects rather than people. See 20 C.F.R. § 416.968(a) (unskilled work "needs little or no judgment to do simple duties that can

be learned on the job in a short period of time").

Because Plaintiff's residual functional capacity and vocational profile matched the criteria of Grid Rule 203.25, which directs a finding of not disabled, the ALJ permissibly relied on this rule to find that Plaintiff could perform unskilled medium jobs that exist in significant numbers in the national economy. See 20 C.F.R. Part 404, Subpart P, Appendix 2, § 203.25; see also 20 C.F.R. § 416.969 ("if the findings of fact made about all factors are the same as the rule, we use that rule to decide whether a person is disabled"); Wright v. Massanari, 321 F.3d 611, 615 (6th Cir. 2003) (if a claimant's vocational characteristics match a Grid Rule, "the grid determines whether significant numbers of other jobs exist for the person or whether that person is disabled.").[2]

Because there is substantial evidence in the record supporting the Commissioner's decision denying Plaintiff's application for benefits, the decision of the Commissioner is AFFIRMED. The clerk is directed to enter judgment accordingly.

IT IS SO ORDERED.

 s/ **James D. Todd**
JAMES D. TODD
UNITED STATES DISTRICT JUDGE

---

[2] Although an ALJ cannot rely solely on SSR 85-15 to apply the Grids, see Jordan v. Commissioner, 548 F.3d 417, 424 (6th Cir. 2008); SSR 85-15, the ALJ also cited SSR 83-14, which concerns evaluating a combination of exertional and nonexertional limitations.